```
          IN THE UNITED STATES DISTRICT COURT
             FOR THE DISTRICT OF NEW JERSEY
                    CAMDEN VICINAGE
```

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | Civil No. 07-0598 |
| v. | |
| $410,000.00 IN UNITED STATES CURRENCY, | |
| Defendant-in-rem. | **OPINION** |

**APPEARANCES:**

Peter W. Gaeta,
Assistant United States Attorney
970 Broad Street, Suite 700
Newark, New Jersey 07102
*Counsel for United States of America*

Michael S. Weinstein, Esq.
Fanny A. Flikshtein, Esq.
Robertson, Freilich, Bruno & Cohen, LLC
The Legal Center - 9th Floor
One Riverfront Plaza
Newark, NJ 07102-5497
*Counsel for Claimant Timothy Wilkes*

Marcy M. McMann, Esq.
Stephen S. Weinstein, P.C.
20 Park Place
Mooristown, New Jersey 07960-7102
*Counsel for Claimant Henry Shitrit*

**DONIO, MAGISTRATE JUDGE:**

Presently before the Court are the motions of two claimants, Timothy Wilkes and Henry Shitrit (collectively,

1

"claimants"), for a stay of a civil forfeiture action brought by Plaintiff United States of America (hereinafter "Government"), and the Government's cross-motion to compel the claimants to respond to Rule G(6) Special Interrogatories pursuant to the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions.  For the reasons that follow, the claimants' motions to stay are denied without prejudice, and the Government's cross-motion is granted.

The present suit arises in the context of a civil forfeiture action brought by the Government pursuant to 18 U.S.C. § 1956 and § 21 U.S.C. 881(a)(6) to forfeit and condemn the use of $410,000.00 in United States Currency (hereinafter the "Property") seized from a vehicle operated by Haim Shamah on August 9, 2006 while Mr. Shamah was traveling on the New Jersey Turnpike.

In its Amended Verified Complaint [Doc. No. 3], the Government alleges that Special Agents from Immigration and Customs Enforcement ("ICE") located in Miami, Florida have been conducting an investigation concerning ongoing money laundering operations being run by Russian and Israeli organized crime members in southern Florida, South Carolina, and New York.  Am. Verified Compl., ¶ 7.  The Government alleges that certain individuals are involved in selling illegal narcotics (MDMA, otherwise known as "Ecstacy") and importing "fraudulent and counterfeit goods" from

China, and that the proceeds of these activities are being laundered in southern Florida, South Carolina and New York. Id.

According to the allegations in the Amended Verified Complaint, on August 9, 2006, Special Agents in Miami, Florida requested that ICE Special Agents in Cherry Hill, New Jersey be on a "look out" for a white GMC Envoy bearing a South Carolina license plate, as investigation revealed that Mr. Shamah was allegedly traveling in that vehicle to the New York/New Jersey metropolitan area with the proceeds from illegal narcotics transactions and the sale of counterfeit goods. Id. at ¶¶ 8, 9. The Government further alleges that on August 9, 2006, a New Jersey State Trooper stopped on the New Jersey Turnpike a white GMC Envoy bearing the South Carolina license plate identified by the Miami ICE Special Agents. Id. at ¶ 10.[1] The Government avers that the police officer had cause to search the vehicle, which revealed that the driver was Mr. Shamah, and that he was transporting a cardboard box containing $410,000.00 in United States Currency. Id. at ¶¶ 11, 13. The Government alleges that when questioned, Mr. Shamah told police that "the money located in the cardboard box was given to him at a Synagogue/Jewish School in Myrtle Beach, South Carolina by an individual identified as Tim Wilkes." See Am. Verified Compl., ¶ 17. The Government also alleges that Mr. Shamah stated that the

---

1. The Amended Verified Complaint alleges that the vehicle was traveling at a high rate of speed. Am. Verified Compl., ¶ 10.

Property belonged to and was to be delivered to Mr. Shamah's "friend" in New York City, an individual identified as "Heby Abe." See id. at ¶¶ 13, 17.

The Government avers that there is probable cause to believe that the Property is involved in a transaction or attempted transaction in violation of the "money laundering statute," 18 U.S.C. § 1956. See Am. Verified Compl., at Count I. The Government also alleges that there is probable cause that the Property "was furnished or was intended to be furnished by any person in exchange for a controlled substance or represents proceeds traceable to such exchange or was used or intended to be used to facilitate any violation of Title II of the Controlled Substance Act, Title 21, United States Code, Section 801, et seq." Id. at Count II.

Three individuals filed claims to the Property under Rule (G)(5) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions. Specifically, claimant Wilkes claims an interest in $159,700.00 in United States Currency [Doc. No. 6]. Claimant Shitrit asserts an interest in $186,000.00 in United States Currency [Doc. No. 8]. The third claimant, Jacob Halbersberg, filed a claim for $64,300.00 in United States Currency

[Doc. No. 9].[2]  There is no assertion in the Amended Verified Complaint that the Property belongs to any of the claimants here.

Claimants seek to stay the civil forfeiture proceeding "until such time as the criminal investigation is concluded or until such time claimant is advised he is not a target of the investigation."  See Proposed Forms of Order [Docket Nos. 13-4, 16-2].  Claimant Wilkes asserts that the Government "has explicitly identified a pending investigation concerning ongoing money laundering operations run by Russian and Israeli organized Crime members in Southern Florida, South Carolina, and New York," and that claimant Wilkes is the subject of that investigation.  See Memorandum of Law in Support of Claimant Wilkes' Motion for a Stay of Proceedings Pending Resolution of the Ongoing Criminal Investigation [Doc. No. 13], at 2.  Claimant Shitrit also asserts that his "activities are now part of the investigation" and that "the government will try to link [him] to the Russian and Israeli organized crime members who are allegedly involved in the ongoing drug trafficking and money laundering operations."  Memorandum of Law in Support of Claimant Shitrit's Motion for a Stay of Proceedings Pending Resolution of the Ongoing Criminal Investigation [Doc. No. 16], at 6.  The Government contends that

---

2. Mr. Halbersberg has not filed a motion to stay.  Moreover, the Government has represented that this claimant has responded to the Special Interrogatories, and consequently the cross-motion to compel as to Mr. Halbersberg shall be dismissed.

5

neither of the claimants is the subject of any related "criminal investigation concerning Russian and Israeli organized crime activities referenced in the forfeiture complaint." See Brief in Opposition to Claimant Shitrit's Motion to Stay the Civil Forfeiture and Cross-Motion for Claimants to Answer Rule G(6) Special Interrogatories ("Government's Br.") [Doc. No. 22], at 4, Brief in Opposition to Claimant Wilkes' Motion to Stay the Civil Forfeiture and Cross-Motion for Claimants to Answer Rule G(6) Special Interrogatories [Doc. No. 20], at 4.

A motion for a stay filed by a claimant is governed by 18 U.S.C. § 981(g)(2), which provides:

> Upon the motion of a claimant, the court shall stay the civil forfeiture proceeding with respect to that claimant if the court determines that--
>
>   (A) the claimant is the subject of a related criminal investigation or case;
>   (B) the claimant has standing to assert a claim in the civil forfeiture proceeding; and
>   (C) continuation of the forfeiture proceeding will burden the right of the claimant against self-incrimination in the related investigation or case.

18 U.S.C. § 981(g)(2). Pursuant to 18 U.S.C. § 981(g)(2), the claimant must satisfy all three elements in order for the stay to be issued. In this case, the Government asserts that the claimants cannot meet any of the elements required for a stay.

The Government contends that the claimants do not have standing to assert a claim in this proceeding. The Government

6

concedes that the claimants satisfied the requirement for statutory standing pursuant to Rule G(5) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions. See Letter Briefs dated June 7, 2007 [Doc. Nos. 26 and 27]. The Government argues, however, that the claimants fail to demonstrate that they have Article III standing, and that they are thus not entitled to request a stay. See id. The Government asserts that more than mere "statutory standing" is required in order to avoid potential "fraud and abuse." See Government's Br., at 11. According to the Government, a claimant "must also have at least a colorable legal or possessory interest in the defendant property." Id. The Government asserts that the "colorable claim" requirement is referred to as "Article III" standing "and is necessary to satisfy the 'case or controversy' requirement of Article III of the Constitution." Id. The Government further asserts that, "once the government makes a *prima facie* case as to someone other than the claimant controlling the seized item the burden shifts to the claimant to establish his independent ownership interest." Id. According to the Government, the only person it knows to have had control over the Property at the time of the seizure was Mr. Shamah, not the claimants here. Id. at 12. The Government also notes that Mr. Shamah stated during questioning that the money belonged to an individual named "Heby Abe." Id. The Government asserts that it has no information or knowledge that the currency

7

at issue belongs to anyone other than "Heby Abe."  Id.  The Government further asserts that in order to satisfy the standing requirement, the claimants must respond to the Special Interrogatories provided so that they may demonstrate a "valid ownership interest" in the Property at issue.  Id. at 12-13.

Claimants counter that they have standing sufficient to satisfy the requirement of 18 U.S.C. § 981(g)(2)(B) to request a stay because they have filed sworn statements of their ownership interest in the Property.  See Memorandum of Law in Support of Claimant Wilkes' Motion for a Stay of Proceedings Pending Resolution of the Ongoing Criminal Investigation [Doc. No. 13], at 3; Memorandum of Law in Support of Claimant Shitrit's Motion for a Stay of Proceedings Pending Resolution of the Ongoing Criminal Investigation [Doc. No. 16], at 11.  Thus, according to the claimants, the filing of a claim per se confers standing upon a claimant to seek a stay.

Resolution of this issue requires the Court to determine whether statutory standing is sufficient to meet the requirement under 18 U.S.C. § 981(g)(2)(B), or whether a claimant must also demonstrate standing under Article III of the Constitution.  To establish statutory standing, a claimant must comply with Rule G(5) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions.  See United States v. $153,968.16 Seized from Bank of America Account No. XXXXXXXX8500, Civil Action No.

8

1:05-CV-2084, 2007 WL 879422, at *2 (N.D. Ga. Mar. 21, 2007) ("'[i]n order to contest a Government forfeiture action, claimants must have statutory standing through compliance with Supp. Admiralty and Maritime Claims R. C(6). . .'") (quoting United States v. One Colt AR-15 Firearm Serial Number TA03524, 349 F. Supp. 2d 1064, 1067 (W.D. Tenn. 2004)).[3] A claimant may meet its burden by filing a claim within a certain time period prescribed by Supplemental Rule G(5), and by setting forth therein the claimant's interest in the property. Supp. Rule G(5)(a)(i)-(ii). To meet his burden, "a defendant cannot passively rely on the Government's pleadings, but must instead affirmatively state his interest in the property at issue." United States v. $153,968.16, 2007 WL 879422, at *3 (citations omitted).

Once a claimant has met the statutory standing requirement by following the procedure set forth in Supplemental Rule G(5), he still must make a prima facie showing that he has Article III standing in order to contest a forfeiture. See United States v. Contents of Accounts Nos. 3034504504 and 144-07143 at Merrill, Lynch, Pierce, Fenner and Smith, Inc., 971 F.2d 974, 984 (3d Cir. 1992)(filing of claim under Supplemental Rules only satisfies formality required of statutory standing, not Article III

---

3. Supplemental Rule C(6) previously set forth the procedure for filing a claim in a civil forfeiture action. The Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions were amended in 2006, and Rule G(5) now governs the procedure for filing a claim.

standing), cert. denied, 507 U.S. 985 (1993). Indeed, standing is a "threshold issue" that is "fundamental to a court's subject matter jurisdiction[.]" United States v. 105,800 Shares of Common Stock of Firstrock Bancorp, Inc., 830 F. Supp. 1101, 1115 (N.D. Ill. 1993)(to contest forfeiture, claimant "must first show a sufficient interest in the property to give him Article III standing.").

A claimant in a forfeiture case has Article III standing if "'he has a legally cognizable interest in the property that will be injured if the property is forfeited to the government. It is this claim of injury that confers upon the claimant the requisite 'case or controversy' standing to contest the forfeiture.'" Id. (quoting United States v. $38,000 in U.S. Currency, 816 F.2d 1538, 1543-44 n.12 (11th Cir. 1987)). To establish Article III standing, a claimant must show that he has superior title to the *res*, such that the seizure of the *res* causes him injury that is not conjectural, hypothetical, or abstract. See United States v. Lazarenko, 476 F.3d 642, 650 (9th Cir. 2007); United States v. $38,570 U.S. Currency, 950 F.2d 1108, 1112 (5th Cir. 1992) (claimant must "'come forth with *some* evidence of his ownership interest in order to establish standing to contest a forfeiture.'") (internal quotation omitted). Therefore, in demonstrating that he has Article III standing, a claimant must make a prima facie showing that he exercises "dominion and control" over the *res*; a

claim of bare legal title is insufficient to establish Article III standing. See Munoz-Valencia v. United States, 169 Fed. Appx. 150, 152 (3d Cir. 2006) ("to find the ownership or possessory interest colorable, we have generally required a showing that the claimant independently exercised some dominion or control over the property."); United States v. 105,800 Shares, 830 F. Supp. at 1115 ("courts have held that possession of legal title only with no authority to exercise dominion and control over the property does not confer standing to challenge a forfeiture.").

The Court rejects the claimants' assertion that the filing of a claim pursuant to Supplemental Rule G(5) per se confers the requisite standing required under 18 U.S.C. § 981(g)(2)(B) for the issuance of a stay. The Court notes that Section 981(g)(2)(B) expressly provides that a claimant must have "standing to assert a claim in the civil forfeiture proceeding[.]" 18 U.S.C. § 981(g)(2)(B) (emphasis supplied). Claimants' position requires the Court to interpret the "has standing" language of the statute as requiring only that a claimant has "statutory standing," in that a claimant need only have filed a claim pursuant to Supplemental Rule G(5). The Court concludes, however, that to have "standing to assert a claim," a claimant seeking a stay must have statutory standing and also make a prima facie show that he has Article III standing to contest the forfeiture. See United States v. Contents of Accounts Nos. 3034504504, 971 F.2d at 984; see also United

States v. $153,968.16, 2007 WL 879422, at *2 ("Along with Article III standing, statutory standing 'is a threshold issue' that a claimant in a forfeiture proceeding must establish before the court can grant claimant's request" for a stay) (citing United States v. $38,000, 816 F.2d at 1544). Though the claimant need not prove the merit of his underlying claim to establish standing, "'he must be able to show at least a facially colorable interest in the proceedings sufficient to satisfy the case-or-controversy requirements. . . .'" United States v. $38,570, 950 F.2d at 1112 (quoting United States v. $321,470 in U.S. Currency, 874 F.2d 298, 302 (5th Cir. 1989)). The Court notes that to assert statutory standing, the "burden is minimal and does not require that defendants explain in any detail the nature of their interest." United States v. $153,968.16, 2007 WL 879422, at *3 (denying request for stay finding that claimants lacked statutory standing). It is for this very reason that the Government asserts that the procedure for obtaining statutory standing -- that is, the timely filing of a verified claim -- "is vulnerable to fraud and abuse because anyone could file a claim," and that a claimant seeking a stay must also have "at least a colorable legal or possessory interest in the defendant property." Government's Br. at 11. The Court agrees. Moreover, since both statutory and Article III standing are required to contest a forfeiture, the Court concludes that both statutory and Article III standing are also required to

request a stay of a civil forfeiture proceeding.  Cf. United States v. $38,000, 816 F.2d at 1543 ("It is well established that in order to contest a forfeiture, a claimant first must demonstrate a sufficient interest in the property to give him Article III standing; otherwise, there is no 'case or controversy,' in the constitutional sense, capable of adjudication in the federal courts.") (citations omitted).  Thus, the Court concludes that before it may grant the claimants' motions for a stay of the civil forfeiture proceeding, it must find that the claimants have demonstrated that they have both statutory and constitutional standing to assert a claim over the property at issue.[4]

       The Court further concludes that the claimants here fail to make a prima facie showing that they are the colorable owners of the Property, and therefore they fail to demonstrate that they have Article III standing in order to request a stay at this time.  The claimants contend only that they filed claims asserting that the Property belongs to them; they do not address whether they have Article III standing.  Moreover, the claims merely assert interests in the defendant property.  Specifically, Claimant Wilkes' claim

---

4.  The Court notes that "[a] determination by the court that the claimant has standing to request a stay . . . shall not preclude the Government from objecting to the standing of a claimant by dispositive motion or at the time of trial."  18 U.S.C. § 981(g)(7).  Therefore, while the claimant must make a prima facie show of standing when seeking a stay, any determination on standing does not preclude further inquiry into the issue at a later juncture in the proceeding.

13

states that he "claims $159,700.00 in United States currency from the resulting seizure," that "[t]he $410,000.00 in cash seized from Mr. Shamah's vehicle are funds in part belonging to Claimant Wilkes," and that Claimant Wilkes' "interest in the property originates from legitimate business and personal income." See Claimant Wilkes' Claim for Forfeited Assets dated March 14, 2007 [Doc. No. 6]. Similarly, Claimant Shitrit's claim states that he "claims $186,000.00 in United States currency resulting from the seizure," that "[t]he $410,000.00 in cash seized from the vehicle driven by Mr. Shamah are funds in part belonging to Claimant Henry Shitrit," and that his "interest in the property originates from legitimate business and personal income." See Claimant Shitrit's Claim for Forfeited Assets dated March 28, 2007 [Doc. No. 8]. The Court cannot conclude, based on the Amended Verified Complaint and the claims filed by the claimants, that the claimants have made a prima facie showing that they exercised "control or dominion" over the Property; their mere assertion of ownership, without more, is insufficient to establish standing in this civil forfeiture action. See United States v. $38,570, supra, 950 F.2d at 1112-13 (holding that to establish Article III standing in a civil forfeiture proceeding, claimant must present court with something more than bare assertion of ownership of property at issue; "[o]rdinarily, therefore, a claimant is required to submit some additional evidence of ownership along with his claim in order to establish

14

standing to contest the forfeiture."); <u>United States v. $511,780 in U.S. Currency</u>, 847 F. Supp. 908 (M.D. Ala. 1994) (where police stopped rental vehicle transporting United States Currency hidden in mattress, and driver of vehicle told police that cousin rented vehicle and all items in vehicle, including mattress containing money, belonged to cousin, court concluded that driver did not have standing to contest forfeiture because cousin, not driver, was owner of mattress and money contained therein); <u>United States v. $26,620.00 in United States Currency</u>, No. Civ. A. 2:05CV50WCO, 2006 WL 949938, at *7 (N.D. Ga. Apr. 12, 2006)(mere allegation by claimant that he is owner of property is insufficient to confer standing to contest forfeiture).  Moreover, the Court notes that the Government filed an Amended Verified Complaint in which it represents that the Property belongs to "Heby Abe," according to statements made by Mr. Shamah during questioning. <u>See</u> Am. Verified Compl., ¶¶ 13, 17, 21.  Accordingly, unlike the case in <u>United States v. $38,570</u>, cited by claimants, nothing in the Government's complaint in this case "clearly specifies" that either of the claimants here exercised "dominion or control" over the Property. There is no evidence, as of yet, that either of the claimants here has a colorable interest in the Property at issue sufficient to demonstrate Article III standing.

Consequently, the Court holds that the claimants have failed to demonstrate at this juncture that they have Article III

15

standing sufficient to assert a claim, and they thereby fail to meet one of the prerequisites for a stay required by 18 U.S.C. § 981(g)(2). Therefore, the Court denies the claimants' motions for a stay without prejudice at this time.

Having found that the claimants failed to meet their <u>prima facie</u> burden of demonstrating that they have "standing to assert a claim" in the civil forfeiture proceeding as required by 18 U.S.C. § 981(g)(2)(B), and because all three elements set forth in 18 U.S.C. § 981(g)(2) must be satisfied before the Court may determine that a stay of the civil forfeiture proceeding is warranted, the Court need not address whether the claimants are "the subject of a related criminal investigation or case," or whether the "continuation of the forfeiture proceeding will burden the right of the claimant against self-incrimination in the related investigation or case." <u>See</u> 18 U.S.C. § 981(g)(2)(A), (C).

The Government has also cross-moved to compel claimants to respond to Special Interrogatories pursuant to Rule G(6) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions. The Government contends that Supplemental Rule G(6) allows for "Special Interrogatories limited to claimant's identity and relationship to the defendant." <u>See</u> Government's Br. at 13. The Government asserts that these Special Interrogatories are necessary to "identify and insure that a claimant has standing to challenge a forfeiture by demonstrating a valid ownership

16

interest in the seized property and protect against nominee claimants." Id.[5]

The claimants oppose the Government's cross-motion on the ground that it is premature. According to claimant Wilkes, "[n]o legal or practical basis exists to require Wilkes at this time to respond to special interrogatories when production of this information may be utilized by the government to circumvent the very purpose behind the pending motion to stay." Letter Brief dated May 31, 2007 [Doc. No. 24], at 6. Wilkes further contends that "many of the interrogatories are irrelevant, overbroad, unlimited in scope and duration and therefore vexatious." Id. Claimant Shitrit adopts the arguments made by claimant Wilkes, and does not set forth any additional arguments in opposition to the Government's cross-motion to compel. See June 5, 2007 Letter Brief [Doc. No. 25], at 2.

In light of the Court's holding denying both motions for a stay of the civil forfeiture proceeding, the Court rejects the claimants' argument that the Special Interrogatories are premature. Moreover, it does not appear that either claimant has made an attempt to respond to any of the Special Interrogatories served

---

5. The Special Interrogatories authorized by Rule G(6) of the Supplemental Rules are specifically intended to gather information that bears on the claimant's standing to assert a claim. See Advisory Committee Notes for Supp. Rule G, Subdivisions (6), (8)(C) (noting the "special role that subdivision (6) plays in the scheme for determining claim standing").

17

upon them.  To the extent the claimants have objections to specific interrogatories, they may so lodge them in their written responses thereto, as provided in Supplemental Rule G(6)(b).  The claimants' objections to individual interrogatories, however, does not warrant an outright refusal to provide any responsive information.  Therefore, the Government's cross-motion to compel is granted.

      An appropriate Order will be entered.

                                        s/ Ann Marie Donio
                                        ANN MARIE DONIO
                                        UNITED STATES MAGISTRATE JUDGE

Dated:   December 21, 2007

cc:   Hon. Jerome B. Simandle